**AMERICAN HOME ASSURANCE COMPANY a/s/o Bulova Corporation, Plaintiff,**

v.

**JACKY MAEDER (HONG KONG) LTD., et al., Defendants.**

No. 96 Civ. 5154(LAK).

United States District Court, S.D. New York.

June 23, 1997.

John K. McElligott, Donovan Parry Carbin Mcdermott & Radzik, for American Home Assur. Co.

Stephen J. Fearon, Condon & Forsyth, for Singapore Airlines, Ltd. and Contact Air Cargo Services.

Robert D. Mercurio, Lane & Mittendorf LLP, for Jacky Maeder (Hong Kong) Ltd.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action to recover for the loss of an air cargo as a result of an armed robbery at John F. Kennedy International Airport in New York City. The matter is before the Court on the motion of Singapore Airlines ("Singapore"), the carrier, and Contact Air Cargo Services ("Contact"), from whose facility the goods were stolen, for leave to amend their answers to assert (a) defenses of lack of standing and limitation of liability against the plaintiff, and (b) a cross-claim against the Hong Kong consignor, Jacky Maeder (Hong Kong) Ltd. ("Maeder").

### Facts

Suppliers of plaintiff's subrogor, Bulova Corporation ("Bulova"), delivered goods to Maeder in Hong Kong for shipment to New York. Maeder completed the appropriate air waybill for the transport and delivered the cargo to Singapore for shipment. In the space denominated "consignee's name and address" were the name and New York address of Celadon Jacky Maeder Ltd., evidently an affiliate of Maeder. In the space denominated "nature and quantity of goods" appeared the words "consolidated shipment per manifest attached." (McElligott Aff. Ex. 3) It is undisputed that the consolidated manifest attached to the waybill listed Bulova as well as Celadon Jacky Maeder Ltd. as consignee. (*Id.* Ex. 2)

The waybill space denominated "flight/date—for carrier use only" bore the type-written entry "SQOO1/04/AUG." The parties agree that this was a reference to Singapore Airlines flight number 1 on August 4, 1995. In fact, however, it is common ground that the shipment left Hong Kong for New York by a different flight some hours later than the departure of flight number 1 and that the itinerary by which it reached New York included a stop in Frankfurt, a city in which flight number 1 did not stop.

Upon arrival of the shipment in New York, Singapore delivered the cargo to Contact to await pickup. While the cargo was in Contact's custody, armed robbers entered the warehouse, tied up the security guard, and

**187**

stole the goods at issue here. Plaintiff paid Bulova the loss of $304,981.85 and was subrogated to Bulova's rights.

### Prior Proceedings

On October 7, 1996, with the consent of counsel, the Court entered a scheduling order which required that any amendment of the pleadings occur by December 1, 1996 and that all discovery be completed by February 1, 1997. Although the discovery period has been extended upon request, no application to extend the period for amendment of the pleadings was granted or, for that matter, sought until the filing of this motion in mid-May 1997.

### Discussion

### I. Governing Law

#### A. The Warsaw Convention

■ All of the amendments sought by Singapore and Contact are based on provisions of the Warsaw Convention [1] ("the Convention"), an international treaty enacted to foster the standardization of the commercial aviation industry. The provisions of the Convention supercede the national laws of the contracting states on the issue of air carrier liability in order to establish a "stable, predictable, and internationally uniform limit that would encourage the growth of a fledgling industry." *Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 256, 104 S.Ct. 1776, 1784, 80 L.Ed.2d 273 (1984).

■ Article 22 of the Convention establishes limits on carrier liability for loss or damage of air cargo. Limitation of liability is lost by the carrier, however, if it "accepts goods without an air waybill having been made out, or if the air waybill does not contain" certain "particulars" relating to the goods and shipment which are required by the Convention. (Art. 9) Among the requisite particulars is a statement of any agreed stopping places (Art. 8(*c*)), a requirement which is deemed satisfied by specification of a scheduled flight number and the specific incorporation in the waybill of the airline's

timetables and tariff. *See Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1034–36 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997); *see also Tai Ping Insurance Co. v. Northwest Airlines*, 94 F.3d 29, 32–33 (2d Cir.1996) (companion case) (limitation is lost if freight is transferred en route to non-specified flight). The Convention establishes also that the consignor is responsible for the correctness of the required statements in the air waybill and that it is "liable for all damages suffered by the carrier or any other person by reason of the irregularity, incorrectness or incompleteness of the said particulars and statements." (Art. 10).

In this case, plaintiff claims that the defendants are not entitled to limitation because the itinerary of Singapore Airlines flight number 1, the flight referred to in the waybill, did not include a stop in Frankfurt whereas the actual itinerary did. Singapore and Contact seek to amend the answers to assert a cross-claim for indemnification against defendant Maeder which claims that (a) if they lose their limitation on liability, it will be because Maeder incorrectly filled out the air waybill, and (b) Maeder is liable, under Article 10 of the Convention for any damage caused by an error in the air waybill. Singapore and Contact seek also to assert this claim as an affirmative defense to liability for any damages in excess of the limits set in the Convention. Finally, they seek to assert as an affirmative defense a claim that plaintiff's subrogee, Bulova, lacks standing under Article 14 of the Convention because it is not the consignee named on the air waybill.

#### B. Leave to Amend

■ The Court starts from the premise that leave to amend should be given freely. Leave may be denied, however, "if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) [the amendment] would be futile." *E.g., Lee v. Regal Cruises, Ltd.*, 916

---

**1.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C.A. § 40105.

F.Supp. 300, 303 (S.D.N.Y.1996) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)), *aff'd*, 116 F.3d 465 (2d Cir.1997). Plaintiff and Maeder contend that leave should be denied here both because the proposed amendments would be futile and because the application is untimely.

## II. Singapore's Motion

### A. Timeliness

■ The relevant facts giving rise to the proposed amendment were obvious to Singapore from the outset. Certainly it knew that the consignee named in the "consignee" space on the face of the waybill was not Bulova and it thus was in a position to challenge plaintiff's standing. Singapore knew also that the air waybill designated flight number 1 and thus was in a position to focus on the argument now made—that Maeder's actions may have deprived it of a limitation of liability that otherwise would have been available to it under the Convention. Singapore nevertheless has offered no explanation for its delay in filing this application for leave to amend.

While liberality often is appropriate, this is not such a case. The February 1, 1997 deadline for applications for leave to amend was fixed only after counsel indicated that no amendments were likely. Discovery and trial preparation proceeded on that assumption. The amendment is not the product of anything that was not known to Singapore at the outset. In these circumstances, the Court concludes that the application is untimely. *See, e.g., John Hancock Mutual Life Insurance Co. v. Amerford International Corp.*, 22 F.3d 458, 462 (2d Cir.1994) (delay of four months after deadline for amendments justified denial). In any case, however, leave to amend to assert the cross-claim and the first

affirmative defense must be denied on the alternate ground of futility.

### B. Futility

#### 1. The Cross–Claim

■ The theory of the cross-claim is that Maeder's alleged insertion in the waybill of the reference to flight number 1 deprived Singapore of limitation of liability. Singapore therefore contends that if is held liable to the plaintiff in an amount exceeding the Convention limit, Maeder is responsible to it, pursuant to Article 10 of the Convention, for the excess.

Article 10 of the provides:

"(1) The consignor shall be responsible for the correctness of the particulars and statements relating to the goods which he inserts in the air waybill.

"(2) The consignor shall be liable for all damages suffered by the carrier or any other person by reason of the irregularity, incorrectness or incompleteness of the said particulars and statements."

The issue therefore is whether the loss that would have been sustained by Singapore should plaintiff prevail against it would have been occasioned "by reason of the irregularity, incorrectness or incompleteness of the said particulars and statements" in the waybill.

■ Maeder argues that Article 10 cannot be so read. It points out that clause (*a*) makes the consigner "responsible for the correctness of particulars and statements *relating to the goods*" and clause (*b*) renders it liable for damages arising from inaccuracy "*of the said particulars and statements.*" (Emphasis added) As the allegedly inaccurate statement here at issue related only to agreed stopping places, and not to the goods themselves, it contends that Article 10 has no bearing.[2]

2. The Court's interpretation of the Convention must begin with "the literal language" of the treaty. *Buonocore v. Trans World Airlines*, 900 F.2d 8, 9 (2d Cir.1990). Since *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134, 109 S.Ct. 1676, 1683–84, 104 L.Ed.2d 113 (1989), a court may not go beyond this literal language if it is "reasonably susceptible of only one interpretation." *Tai Ping*, 94 F.3d at 31 (quoting *Buonocore*, 900 F.2d at 9–10). The Court therefore may not look

to other methods of interpretation unless the meaning of a treaty provision is unclear on its face. *Chan*, 490 U.S. at 134, 109 S.Ct. at 1683–84.

The Court finds that Article 10 of the Convention is ambiguous. Article 10 reasonably might be read to have a scope broader than that ascribed to it by Maeder. A broader reading of Article 10 arguably is supported by the fact that

There is a good deal of appeal to Maeder's position. Indeed, this view is espoused by a leading work on the convention, which explains that only statements of the type required by Article 8 (*g*)–(*j*), "e.g. specifications relating to the nature, packing, weight and the external condition of the goods," can give rise to consignor liability under Article 10. ELMAR GIEMULLA, ET AL., WARSAW CONVENTION § Art. 10 WC, at 2 (1995). It is supported also by the only relevant case that has been called to the Court's attention although the case is not remotely dispositive. *Gerardo Ramon y Cia. SAIC v. Panair do Brazil* (Argentina 1965), which is described in a text on the Convention, exemplifies what the drafters of the Convention seem to have had in mind. There, the consignee ordered six kilograms of pharmaceutical products. The carrier's employee (acting as agent for the consignor) made a clerical error and noted 60 kilograms on the waybill. This in turn resulted in a delay in customs and prejudice to the consignee. The Argentine court quite reasonably held the consignor liable under Article 10 because the error in the waybill was the cause of the damage. *See* LAWRENCE B. GOLDHIRSCH, THE WARSAW CONVENTION ANNOTATED 42–43 (1988). In consequence, the Court is strongly inclined to the view that Maeder's asserted reading of Article 10 is correct. It is unnecessary, however, to decide the case on this ground.

In this case, the rule for which Singapore contends would make little sense. While the Court assumes *arguendo* that Maeder placed the reference to flight number 1 in the waybill, Singapore necessarily knew when it placed the shipment on a different flight that the route implicitly designated by Maeder would not be adhered to. At a minimum, therefore, the fact that the waybill and the listing of agreed stopping places implicit in the reference to flight number 1 did not coincide with the route actually chosen necessarily was known to the carrier when it placed the goods on a different flight. Even if Maeder was aware of the change—and there is no allegation that it was—it would make no sense to shift to the consignor the consequences of Singapore's decision to change or acquiesce in a change in the routing. If Singapore lost limitation by virtue of the change, it has only itself to blame. In these circumstances, the Court could not accept Singapore's position even if its reading of Article 10 were appropriate as applied to different facts.

Accordingly, the Court holds that the proposed cross-claim against Maeder fails to state a claim upon which relief may be granted and, in consequence, that leave to amend to assert that cross-claim would be futile.

### 2. The Affirmative Defenses

 The first of the two newly proposed affirmative defenses is that Singapore and Contact would be entitled to indemnification from Maeder to the extent that their liability, if any, to plaintiff exceeds the Convention limitation of liability. (Prop.Am. Ans.¶¶ 27–28) This would be insufficient even if the cross-claim were not, as a defendant's right to indemnification from a third party does not affect its liability to the plaintiff. It is doubly so in view of the insufficiency of the cross-claim.

 The second of the newly proposed defenses is that plaintiff lacks capacity to sue under Article 14 of the Convention, a defense asserted in the proposed pleading only in the most conclusory terms. At oral argument, however, counsel for movants indicated that the basis of the defense is that only Celadon Jacky Maeder was named in the consignee box on the face of the waybill. The defense is insufficient on the facts of this case.

Article 9 states that the carrier loses limitation of liability if it accepts goods without a waybill containing "all of the particulars set out in Article 8(*a*) to (*I*), inclusive, and (*q*) ..." The drafters thus made specific reference in Article 9, by precise reference to particular clauses of Article 8, to particulars and statements, the absence of which would result in loss of limitation. Article 10, on the other hand, speaks much more generally of the "particulars and statements relating to the goods" without defining that term by reference to specific clauses of Article 8. Thus, although the Court does not find the contention persuasive, it is arguable that the phrase "particulars and statements relating to the goods" in Article 10 was intended as a reference to Article 8 in its entirety.

Article 14 of the Convention permits the consignor and the consignee to enforce rights under the waybill. If the waybill indicated that only Celadon Jacky Maeder was the consignee, the defense might have merit. But the waybill was not so limited. It referred on its face to the attached consolidated manifest, and the consolidated manifest made clear that Bulova was a consignee. In consequence, whatever might be the result were the manifest not attached and referred to on the face of the waybill, there is no colorable basis for supposing that Bulova, plaintiff's subrogor, lacked standing to sue under the Convention. The proposed second affirmative defense is insufficient in law.

## III. Contact's Motion

### A. Plaintiffs Alleged Lack of Standing

Contact seeks to assert the same cross-claims and affirmative defenses as Singapore. Its claim that the plaintiff lacks standing fails for exactly the same reasons as Singapore's.

### B. Indemnification by Maeder

■■■ Contact's claim that Maeder would be liable to it for any damages above the limits in the Convention poses different problems from the motion asserted by Singapore. While Singapore necessarily knew that the shipment went out on a flight different than that specified on the air waybill, Contact may not have known that the air waybill was inaccurate until informed of that fact in this litigation. The timeliness inquiry therefore is different with regard to Contact. It is chargeable with delay in seeking to assert the indemnification cross-claim and affirmative defense only after it was put on notice of the claimed defect in the air waybill on or about July 9, 1996, when it was served with the complaint.[3] Even under this analysis, however, Contact clearly knew of the allegations giving rise to its claim long before the December 1, 1996 final date for amendments. Yet it did not seek leave to amend until April 30, 1997. Absent a claim of excusable neglect or good cause for the delay, and there is none, this is simply too long. Contact's motion therefore is denied on the ground of untimeliness. Moreover, Contact's motion to amend would be futile as well, although the analysis of the issue differs from the Court's explanation of the futility of Singapore's motion.

■■■ Contact essentially claims that Maeder would be liable to it for indemnification if Maeder's error in completing the waybill deprives it of limitation under the Convention. As an initial matter, it is unclear that Contact has any right to limitation of liability at all. By its terms, the Convention extends limitation only to "carriers," a term which it leaves undefined.[4] (Article 22) Though the complaint (¶ 3) and both answers (Singapore Ans. ¶ 2; Prop.Am.Ans. ¶ 2) allege that Singapore is a carrier engaged in the international transportation of cargo, it nowhere is asserted that Contact is a "carrier" for purposes of the Convention, and no facts are alleged which would lead the Court to conclude that Contact was involved in actually operating airplanes and transporting the freight in question through international air travel.[5] Contact's limitation argument

3. See Cpt ¶ 9 (alleging that Maeder's waybill failed to comply with Convention Articles 9 and 10).

4. As "carrier" is not defined in the Convention and is susceptible to a number of possible meanings, the Court concludes that the term is ambiguous. See Kabbani v. International Total Services, 805 F.Supp. 1033, 1039 (D.D.C.1992) ("carrier" ambiguous under Convention); see also note 2, supra. Although the Court may not engage in interpretation of treaty language that is clear on its face, it may employ traditional methods of interpretation to discern the meaning of ambiguous terms. Chan, 490 U.S. at 134, 109 S.Ct. at 1683–84.

5. Allegations of these facts would establish that Contact was a carrier. Pflug v. Egyptair Corp., 961 F.2d 26, 31–32 (2d Cir.1992) (discussing "actual carriers" as airlines that, inter alia, carry passengers or baggage). However, it is not necessary that a carrier operate planes or directly effect the transport of freight from one place to another. An entity may be either a "direct" carrier, as is Singapore, or an "indirect" carrier. Royal Insurance Co. v. Amerford Air Cargo, 654 F.Supp. 679, 681–82 (S.D.N.Y.1987). The court in Royal held that certain types of freight forwarders may be "indirect" carriers under the convention, basing its holding on a definition of that term found in 14 C.F.R. § 296.1(e) does not relate directly to the Convention, a number of courts have followed Royal in determining that certain types of freight forwarders may be carri-

therefore can not rest on a claim that it is a carrier. Contact, however, may be entitled to limitation as an agent of Singapore.

▮ "It is fairly well established in this Circuit that the agent of an air carrier may claim the limitation of liability provisions found in the Convention." *Royal Insurance Co. v. Amerford Air Cargo*, 654 F.Supp. 679, 682 (S.D.N.Y.1987).[6] This rule is well-founded. As adverted to earlier, the purpose of the Convention is to ensure uniformity in the field of air transport. Article 22 demonstrates that an important aspect of this uniformity is standardized liability for loss or damage to freight. Extension of limitation to

carrier's agents is necessary because, as numerous courts have recognized, carriers very often indemnify their agents against damages.[7] Failure to accord those agents limitation would allow plaintiffs to circumvent the limitation of liability of Article 22 and frustrate the Convention's primary goal of uniformity by obtaining damages without limitation from agents which the carriers often would have to indemnify. *See Reed*, 555 F.2d at 1092 (limitation for agents necessary because "plaintiffs would seek to circumvent the Convention's limitation by bringing suit against the pilot or some other employee of the airline involved.").[8]

ers for Convention purposes. *See Martin Marietta Corp. v. Harper Group*, 950 F.Supp. 1250, 1254 (S.D.N.Y.1997); *Sega of America v. A.M. Express Freight, Inc.*, Nos. 92 Civ. 5838(JSM), 92 Civ. 8382(JSM), 1995 WL 577784, at *3 (S.D.N.Y. Sept.29, 1995) (*dicta*); *Hitachi Data Systems Corp. v. Nippon Cargo Airlines Co.*, No. C–93–2456 MHP, 1995 WL 16923, at *6 (N.D.Cal. Jan.6, 1995); *Pan American World Airways, Inc. v. C.F. Airfreight, Inc.*, No. 89 Civ. 4182(TPG), 1990 WL 240947, at *1 (S.D.N.Y. Dec.28, 1990). Contact, however, neither claims that is an indirect carrier nor alleges any facts from which this Court could infer such a conclusion. Thus, the record provides no support for the proposition that Contact is an indirect carrier under the Convention. The Court notes that Contact claims it is entitled to limitation in paragraphs 65–68 of its answer. However, in paragraph 67, it specifically refers to another party as "the carrier" without ever claiming to be a carrier itself. The allegations in the answer are consistent with a claim of limitation on the ground that Contact is the agent of a carrier, not a carrier itself.

Moreover, the validity of the "indirect" carrier doctrine is not unassailable. Though the *Royal* decision treats it as a recognized doctrine, the indirect carrier doctrine had not been applied in a Convention case previously. As support for his interpretation of the term, Judge Canella relied on a C.F.R. provision that has no direct connection to the Convention, a maritime case which defined forwarder-carriers in the context of sea carriage, and a decision regarding aeronautics permits. It is difficult to discern what any of these authorities has to do with the meaning of an international treaty regulating air transport. In view of the disposition of this case on other grounds, this Court merely notes these issues and expresses no opinion as to the validity of the indirect carrier doctrine.

6. *See Reed v. Wiser*, 555 F.2d 1079, 1092 (2d Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977); *Sega of America, Inc. v. A.M.*

*Exp. Freight, Inc.*, 1995 WL 577784, at *3 (S.D.N.Y.1995) (*dicta*); *In re Air Disaster at Lockerbie*, 776 F.Supp. 710, 712–13 (E.D.N.Y.), *point not considered on appeal*, 928 F.2d 1267 (2d Cir.), *cert. denied*, 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); *Jaycees Patou, Inc. v. Pier Air International, Ltd.*, 714 F.Supp. 81, 84 n. 5 (S.D.N.Y.1989); *Baker v. Lansdell Protective Agency, Inc.*, 590 F.Supp. 165, 170–71 (S.D.N.Y. 1984); *see also Kabbani*, 805 F.Supp. at 1038–39.

The Court recognizes that some of these cases were decided before *Chan* and that their validity might be questioned in light of *Chan*'s strict instruction to engage in interpretation only when treaty language is unclear on its face. However, as the Second Circuit repeatedly has explained with regard to the precedent in *Exim Industries v. Pan American World Airways*, 754 F.2d 106, 108 (2d Cir.1985), pre-*Chan* cases which interpret ambiguous language are not subject to attack. *See Brink's*, 93 F.3d at 1033. ("*Exim* did not violate the rule invoked in *Chan* ... because *Exim* involved ambiguous language.") (citing *Maritime Insurance Co. Ltd. v. Emery Air Freight Corp.*, 983 F.2d 437, 440 (2d Cir.1993)). Because the Convention does not define "carrier," that term is ambiguous, and the pre-*Chan* cases interpreting the scope and meaning of that term, like *Exim*, are still valid. Moreover, this ambiguity extends to the question of the status of carrier's agents under the Convention. *See Kabbani*, 805 F.Supp. at 1039 ("the Warsaw Convention is ambiguous regarding whether liability limitations apply to the agents of carriers").

7. *See Reed*, 555 F.2d at 1089–90; *Kabbani*, 805 F.Supp. at 1039; *Lockerbie*, 776 F.Supp. at 712 (citing cases). In this case, Singapore, in Article 8.1 of their contract, indemnified Contact for "any legal liability for claims or suits ... in respect of any loss of cargo." (Contact Ans. ¶ 73).

■ The fact that Contact may have a right to limitation as Singapore's agent, a determination which the Court declines to make at this time, the important question for purposes of this motion is the nature of the limitation that Contact would enjoy. If Contact's limitation stands and falls with that of its principal, its indemnification claim would be rendered insufficient by the failure of Singapore's claim. If, however, it is entitled to limitation in its own right, which is unaffected by the actions of Singapore, then it may be able to assert a claim for indemnification. This Court concludes that Contact's right to limitation, if any, stands and falls with that of its principal. Its proposed amendment therefore would be futile.[9]

The policy that supports granting limitation to agents also supports connecting that limitation with that of the principal. If limitation is extended to agents, it is merely to ensure that a plaintiff may not circumvent the carrier's limitation by suing the agent, which in turn would claim over against the carrier. Once a carrier has lost limitation, there is no need to protect its agents, as doing so would not further the Convention's goal of uniformity.

The Court has determined that Singapore's actions and knowledge with regard to the itinerary specified on the waybill make its asserted cross-claim and indemnification defense against Maeder futile. Because Contact would be entitled to limitation, if at all, only in circumstances in which its principal would be so entitled, there is no valid reason to allow Contact to sue Maeder for the loss of limitation when its principal could not seek such indemnification. Thus, the motion to assert an indemnification cross-claim and affirmative defense is denied as untimely and futile.

*IV. Withdrawal of Motion*

The Court heard oral argument of this motion on June 16, 1997. At the close of that proceeding it announced its decision orally and informed the parties that a written opinion could be expected in a matter of days. In response, counsel for Singapore and Contact asked the Court for leave to withdraw the motion with prejudice. Although the application initially was opposed by counsel for plaintiff and Jacky Maeder, all parties relevant to the motion subsequently asked that movants be allowed to withdraw the motion.

The Court declines to permit withdrawal of the motion after its decision has been announced. It sees no proper purpose that would be served by allowing a litigant to seek a decision and, upon receiving it, wipe the slate clean.

*Conclusion*

For the foregoing reasons, the motion for leave to file an amended answer is denied on the grounds that it is untimely and, in any case, that the proposed cross-claim and affirmative defenses are insufficient as a matter of law.

SO ORDERED.

---

**8.** *Accord, Kabbani,* 805 F.Supp. at 1039–40; *Lockerbie,* 776 F.Supp. at 712–13; *Baker,* 590 F.Supp. at 170–71.

**9.** Even if this were not the case, the proposed amendment probably would be futile because, as explained above, Article 10 appears not to contemplate claims against the consignor for air waybill errors which do not relate to the goods themselves. The waybill error in this case relates to the itinerary of the shipment, and so apparently is not within the purview of Article 10. See GIEMULLA, ET AL., WARSAW CONVENTION § Art. 10 WC, at 2 (1995).