**In re AIR CRASH OFF LONG ISLAND NEW YORK, ON JULY 17, 1996.**

No. 96 Civ. 7986 (RWS).
MDL No. 1161 (RWS).

United States District Court,
S.D. New York.

Oct. 12, 1999.

Kreindler & Kreindler, New York City (Lee S. Kreindler, Steven R. Pounian, James P. Kreindler, of counsel), Speiser, Krause, Nolan & Granito, New York City (Frank H. Granito, Jr., Frank H. Granito, III, of counsel), Baumeister & Samuels, New York City (Michael F. Baumeister, of counsel), Schaden, Katzman & Lampert, Broomfield, CO (Richard F. Schaden, of counsel), Nolan Law Group, Chicago, IL (Donald J. Nolan, of counsel), Waite, Schneider, Bayless & Chesley, Cincinnati, OH (Jerome L. Skinner, of counsel), for Plaintiffs.

Haight Gardner Holland & Knight, New York City (Randal R. Craft, Jr., William C. Brown, III, Alan D. Reitzfeld, of counsel), for Trans World Airlines, Inc.

David Weber & Edwards, New York City (George F. Hritz, Cynthia A. Feigin, of counsel), Perkins Coie, Seattle, WA (Keith Gerrard, Steven S. Bell, Jay S. Brown, of counsel), for Boeing Co.

## OPINION

SWEET, District Judge.

Defendants The Boeing Company and Trans World Airlines, Inc. have moved, on the ground of *forum non conveniens*, to dismiss each action in this multidistrict litigation arising from the death of a French domiciliary (the "French Actions"). For the reasons set forth below, the motion is denied.

### Prior Proceedings

This multidistrict litigation arises from the catastrophic destruction of TWA Flight 800 on July 17, 1996, shortly after its departure from John F. Kennedy International Airport in New York for a flight to Paris and Rome. This Court has previously summarized the factual background of the case in other opinions, familiarity with which is assumed. *See In re Air Crash Off Long Island,* 27 F.Supp.2d 431 (S.D.N.Y.1998); *In re Air Crash Off Long Island,* Nos. 96 Civ. 7986(RWS) and MDL 1161(RWS), 1998 WL 292333 (S.D.N.Y. June 2, 1998).

The largest number of foreign domiciliaries on Flight 800 were from France. The families and other beneficiaries of forty-five French decedents have one or more unresolved actions pending before this Court.[1]

Several proceedings connected with the incident are simultaneously taking place in France. France's Department of Treasury has paid death benefits to the French beneficiaries of two Flight 800 decedents who were French government employees: Dominique D'Humieres and Yvon Lamour. The Department of Treasury has filed an action against TWA in France to recoup

these payments. The D'Humieres and Lamour beneficiaries have suits pending before this Court. Defendants also have notice of suits filed against TWA and Boeing in France by the Caisse Primaire d'Assurances Maladie ("CPAM") of seven French towns, to recoup social security-like benefits paid to the beneficiaries of four Flight 800 decedents: Guy Dupont, Alain Laforge, Jean–Pierre Hochart, and Rodolf Merieux.

The motion was filed on April 28, 1999. Opposition and reply papers were received through August 6, 1999, at which time the motion was deemed fully submitted.

### Discussion

As jurisdictional statutes are drawn with a "necessary generality," often giving plaintiffs more than one choice of forum, "the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). To thwart such mischief, the doctrine of *forum non conveniens* was developed, permitting a court to dismiss an action and transfer it to, or enable it to be re-filed in, a more convenient forum. *See Canada Malting Co. v. Paterson S.S.,* 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932).

At first blush, one might well wonder why Defendants would possibly move to dismiss a large number of actions in this litigation on *forum non conveniens* grounds. The accident occurred over United States territorial waters approximately eight nautical miles off the coast of New York State, all defendants are United States corporations, and most—if not all— of the evidence pertaining to liability is located in the United States. The motion,

---

1. Defendants originally contended that 46 actions were subject to this motion. The number was revised to 45 following Defendants' apparent concession that the action based on the death of Francis Gasq should not be included among the French Actions.

however, is predicated on a conditional promise: if the Court grants the motion and dismisses the French Actions, and those Actions are subsequently filed in France, Defendants will agree, with respect to the French Actions: (1) to consent to the jurisdiction of the courts of France for trial; (2) not to contest liability for full compensatory damages in the courts of France to any plaintiff or beneficiary who, under the applicable law, suffered a compensable injury as a proximate result of the accident and promptly to try such damages if the claim cannot be settled; (3) to promptly pay any damages awarded by the courts of France, subject to any right to appeal in that forum; and (4) to treat as tolled any statute of limitations under French law for any plaintiff or named beneficiary in a pending U.S. Flight 800 action, provided that proceedings are commenced in France within 120 days of *forum non conveniens* dismissal. The crux of Defendants' position is that agreeing not to contest liability removes the major justification for trial in the United States; since damages evidence as to the French Actions is most likely to be located in France, it would be proper to grant the motion to dismiss.

Defendants' motion is a well-crafted attempt to avoid some of the more obvious legal barriers to a motion to dismiss on *forum non conveniens* grounds. Nevertheless, for the reasons set forth below, the motion will be denied.

## I. The Doctrine of Forum Non Conveniens

█ The doctrine of *forum non conveniens* "leaves much to the discretion of the court to which plaintiff resorts." *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839. "[D]ismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co.*

*v. Reyno*, 454 U.S. 235, 249, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

█ There are two steps to resolving a *forum non conveniens* motion. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir.1996). First, the court must determine whether an adequate alternative forum is available. *See id.; Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 981 (2d Cir.1993). If an adequate alternative forum is available, the court must then consider the relevant "private" and "public" interest factors and determine whether "the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chem., Co.*, 942 F.2d 164, 167 (2d Cir. 1991).

Before proceeding to the merits, however, it is necessary to dispose of Plaintiffs' two threshold objections that the motion should be barred for (1) untimeliness, and (2) lack of evidentiary support.

## II. The Motion Is Not Time–Barred

█ A late *forum non conveniens* motion is disfavored "because a defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve." *In re Air Crash Disaster Near New Orleans, La., on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir.1987), *vacated on other grounds, sub nom, Pan American World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). As Plaintiffs point out, this motion was made two-and-one-half years after the first filed case and two years after the first hearing before this Court. The parties and this Court have invested significant time and resources in this action to date. Substantial liability discovery and investigation have been completed, damages documents have been collected, and witnesses have been interviewed.

However, costs and inconvenience, although not specifically mentioned among the *Gilbert* public and private interest fac-

tors, are generally considered within the context of those factors. *See Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 613–14 (3d Cir.1991). Considering costs and inconvenience as a threshold matter, therefore, would make redundant any subsequent consideration under the private and public interest factors, and perhaps give these aspects excessive weight in the analysis. Indeed, in *New Orleans*—the primary case upon which Plaintiffs rely for their untimeliness objection—the court stated that "the timeliness of the motion is one of the private 'practical problems' to be considered under the [*Gilbert*] and *Reyno* principles." *New Orleans*, 821 F.2d at 1165 n. 30. Timeliness can also impact on the public interest factor of court congestion and administration.

Therefore, to the extent Plaintiffs have incurred costs and inconveniences which weigh in favor of denying the instant motion, such costs and inconveniences will be considered in Part V below, in the context of the private and public interest factors.

### III. The Motion Is Not Barred for Lack of Evidentiary Support

Plaintiffs also assert that Defendants' motion must be rejected as a matter of law because it is supported only by the argument of counsel and fails to present necessary proof. However, the holdings of the cases cited by Plaintiffs do not support such an assertion. *See, e.g., Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir. 1988); *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308–09 (11th Cir.1983); *Recumar Inc. v. KLM Royal Dutch Airlines*, 608 F.Supp. 795, 799 (S.D.N.Y.1985). These cases stand generally for the proposition that "the level of detail a moving defendant must submit depends upon the particular facts of the case." *Lacey*, 862

F.2d at 44 (*citing New Orleans*, 821 F.2d at 1165 n. 28).[2] As with the untimeliness objection, the strength of the evidence submitted by a defendant in a *forum non conveniens* motion must be weighed in its proper context—that is to say, in considering whether an adequate alternative forum is available and whether the private and public interest factors weigh for or against dismissal. Where, as here, Defendants are willing not to contest liability, the level of detail needed to sustain the motion may be reduced.

### IV. France Is An Adequate Alternative Forum

■ "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." *Gilbert*, 330 U.S. at 506–07, 67 S.Ct. 839. *Gilbert's* determination has been interpreted to mean that an adequate alternative forum must exist. *See Reyno*, 454 U.S. at 254 n. 22, 102 S.Ct. 252. Thus, the parties must be subject to personal jurisdiction and service of process in the alternative forum. *See Gilbert*, 330 U.S. at 507, 67 S.Ct. 839. As to adequacy, the possibility that the alternative forum might result in an unfavorable change in the law for the plaintiff is not accorded substantial weight. *See Reyno*, 454 U.S. at 252 n. 19, 102 S.Ct. 252. However, "where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Id.* at 254 n. 22, 102 S.Ct. 252.

As indicated above, Defendants have agreed to submit to suit in France if this Court grants this motion. Acceptance by the French courts of Defendants' submission to suit can also be made a condition of

---

**2.** In *La Seguridad*, the Eleventh Circuit held that the district court was unaware of the underlying nature of the claims of the parties and could not, therefore, even know what level of proof would be sufficient to sustain a *forum non conveniens* motion. *See La Seguridad*, 707 F.2d at 1308–10. In *Recumar*, the

defendant merely suggested several alternative fora (the Netherlands, the Netherland Antilles, and Peru), making it impossible for the court to weigh the relative advantages of those fora. *See Recumar*, 608 F.Supp. at 799. Thus, neither of these cases establishes a general minimum level of necessary proof.

dismissal. Conditional dismissals have frequently been used by courts to ensure that an alternative forum will exist. *See, e.g., Calavo Growers v. Belgium,* 632 F.2d 963, 968 (2d Cir.1980). An alternative forum is thus presumptively available. Moreover, Defendants point to the pendency of actions in France against Boeing and TWA as evidence of the ability of French courts to exercise jurisdiction over Defendants.

As for the adequacy of the French forum, several courts have previously found that French tort law provides an alternative to U.S. law sufficient to satisfy the standard of *Reyno. See, e.g., Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1429 (11th Cir.1996); *Mediterranean Golf, Inc. v. Hirsh,* 783 F.Supp. 835, 841 n. 6 (D.N.J.1991) ("French law has a very broad statutory basis for tort liability").[3]

Plaintiffs object that France is an inadequate forum on the grounds that (1) the Warsaw Convention (the "Convention") bars jurisdiction in France because (a) Defendants have not shown that the French Actions could have been brought in France, and (b) *forum non conveniens* is not available when Plaintiffs have exercised their option to sue under Article 28 of the Convention; and (2) Defendants have failed to establish that a French court will accept a waiver of the statute of limitations of Article 29 of the Convention.

Article 28(1) of the Convention reads:

An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* 49 U.S.C.A. § 40105 note, at 41 (1997).

It is established law in this Circuit that Article 28 confers treaty jurisdiction over the carrier (here, TWA), and bars federal jurisdiction outside the four fora enumerated in the Article: the carrier's place of incorporation, the carrier's principal place of business, the place of ticket purchase, or the final destination on the ticket. *See Gayda v. LOT Polish Airlines,* 702 F.2d 424, 425 (2d Cir.1983) (*citing Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

TWA is incorporated and has its principal place of business in the United States. Hence, suit in France would allegedly proceed for the French Actions only if France were the place of ticket purchase *or* the final destination. For at least ten of the forty-five French Actions, Plaintiffs allege that tickets were purchased in the United States. Defendants allege that for at least five of those ten Actions, tickets were purchased in France or France was the final destination on the ticket.[4]

However, as to the majority of the French Actions, there is on this record a lack of evidence regarding either place of ticket purchase or final destination. Nevertheless, while Article 28 limits the fora in which a plaintiff may bring suit, it does not limit the fora to which a court may transfer such suit. Of course, the request in the instant motion is not for transfer but for dismissal. However, where, as here,

---

**3.** Plaintiffs apparently do not contest this aspect of the "adequacy" requirement. Plaintiffs do raise the issue that the French prohibition on contingency fees may impact negatively on Plaintiffs' ability to recover if the French Actions are dismissed. This issue is properly addressed in the discussion on the private and public interest factors. *See infra* Part V.

**4.** The numbers discussed here reflect Defendants' apparent concession that one action (Francis Gasq) originally counted among the French Actions should not be counted as such, since decedent Gasq was allegedly a naturalized United States citizen domiciled in Florida.

the court can condition dismissal on the subsequent acceptance of jurisdiction over the actions by a foreign court, a dismissal operates like a transfer.

 Plaintiffs contend, to the contrary, that the language of Article 28(1), considered in the context of the Convention as a whole and of its drafting history, prohibits a court from declining to exercise its jurisdiction in a case properly brought under Article 28(1). Plaintiffs rely on *United States v. National City Lines, Inc.*, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948), for the proposition that *forum non conveniens* is not available when a statute or treaty (such as the Convention) creating a right of action establishes special jurisdiction and dictates the proper venue.

However, *National City Lines* stands for a far narrower proposition—that § 12 of the Clayton Act confers special jurisdiction in certain antitrust actions, thereby prohibiting federal district courts from transferring cases brought under § 12 to other federal district courts pursuant to the doctrine of *forum non conveniens.* See id. at 588, 68 S.Ct. 1169. In reaching its decision, the Supreme Court relied heavily on the legislative history of § 12, which emphasized Congress's desire to provide plaintiffs injured by violations of the antitrust laws an effective and convenient means of seeking a remedy. *See id.* at 582–89, 68 S.Ct. 1169. The case does not support the proposition that any special venue statute will prohibit dismissal on *forum non conveniens* grounds.

In fact, the limits of *National City Lines* were recognized by this Circuit in *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127 (2d Cir.1987) (per curiam), which held that a special venue provision did *not* prohibit dismissal of a RICO case on *forum non conveniens* grounds absent clear legislative history to the contrary. *Id.* at 130. Moreover, the court noted that in light of 28 U.S.C. § 1404(a), the modern federal venue transfer statute passed by Congress in 1948, *National City Lines* was "effec-

tively overruled." *Transunion*, 811 F.2d at 130.

An objection nearly identical to the one raised by Plaintiffs in this action was raised in *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944 (1st Cir.1991). *Howe* involved an appeal from a dismissal, on *forum non conveniens* grounds, of a securities case brought in the United States against Canadian defendants. The *Howe* plaintiffs, relying on *National City Lines*, argued that the special venue provisions in the securities laws prohibited dismissal on *forum non conveniens* grounds. In upholding the district court's decision to dismiss, Justice (then Judge) Breyer wrote:

> [I]n the international context one can ask, "What is so special about a special venue statute?" If a *general* venue statute opening federal court doors (say, in New York) is compatible with an international *forum non conveniens* transfer (say, to Italy), why does a special venue statute which simply opens another court's doors (say, in California) suddenly make the same international transfer unlawful? *Both* kinds of statutes open otherwise closed court doors. *Neither* kind of statute, explicitly or (absent some special legislative intent) implicitly, prohibits an international transfer. The distinction between "special" and "general" venue statutes is particularly difficult to maintain in light of congressional amendments to the "general" venue statute that have nearly erased the distinction between special and general.

*Id.* at 949. Justice Breyer's reasoning was cited with approval in a recent case in this Circuit, *Capital Currency Exchange, N.V. v. National Westminster Bank PLC*, 155 F.3d 603, 608 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1459, 143 L.Ed.2d 545 (1999), which also reaffirmed the holding of *Transunion. See id.* at 606–09. The fact that the Warsaw Convention has a special venue provision does not, by itself, preclude the possibility of dismissal on *forum non conveniens* grounds.

Nevertheless, Plaintiffs contend that the drafting history of the Convention demonstrates that the four fora enumerated in Article 28(1) were chosen for their prima facie convenience to the carrier. Therefore, a plaintiff's choice of forum under Article 28 *cannot* be inconvenient to Defendants. For support, Plaintiffs point to the drafters' adoption of a British proposal eliminating venue at the place of the accident to prevent suit in a country with undeveloped law, no relation to the contract, or far from the carrier's home. *See Minutes*, Second International Conference on Private Aeronautical Law, Oct. 4–12, 1929, Warsaw, at 113–16 (Robert C. Horner & Didier Legrez trans., Fred B. Rothman & Co.1975) ("*Minutes*"). Plaintiffs also rely on Great Britain's submitted—then withdrawn—proposal to permit judicial discretion to decline jurisdiction in favor of suit in another forum, *see Minutes* at 169, as further evidence that the drafters did not intend to allow a court to disturb plaintiff's choice of venue under 28(1).

The drafting history upon which Plaintiffs rely is inconclusive, in sharp contrast to the absolutely clear legislative history in *National City Lines*. *See National City Lines*, 334 U.S. at 586–87, 68 S.Ct. 1169 ("discussions in Congress ... disclose *no other thought* than that the choice of forums was given as a matter of right") (emphasis added). For example, the adopted British proposal withdrawing venue from the accident site actually weighs against Plaintiffs' position. In the discussion concerning the proposal, the drafters voiced concerns that defendant carriers might be sued in countries lacking established systems of justice or impartial courts, where it would be easy to blackmail the carrier. *See Minutes* at 114 (Statement of Mr. Youpis). Where, as here, a defendant is actively seeking dismissal, that concern obviously does not exist. Nothing in the discussion indicates a desire to restrict defendant carriers to the fora listed in Article 28(1).

Moreover, Article 28(1) must be read in conjunction with Article 28(2), which provides that "Questions of procedure shall be governed by the law of the court to which the case is submitted." 49 U.S.C.A. § 40105 Note at 46. Defendants maintain that this procedural clause permits a U.S. court to exercise its discretion to dismiss a Convention case on *forum non conveniens* grounds. Plaintiffs counter that the British *forum non conveniens* proposal was submitted after the Convention already contained the 28(2) language, and that the Convention was drafted by civil law jurists, to whom *forum non conveniens* was an alien concept. *See Air France v. Saks*, 470 U.S. 392, 399, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985).

"[I]nterpretation[s] of the Convention must begin with 'the literal language' of the treaty.... [A] court may not go beyond this literal language if it is 'reasonably susceptible of only one interpretation.'" The Court therefore may not look to other methods of interpretation unless the meaning of a treaty provision is unclear on its face." *American Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd.*, 969 F.Supp. 184, 188 n. 2 (S.D.N.Y.1997) (*citing Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989); *Buonocore v. Trans World Airlines*, 900 F.2d 8, 9 (2d Cir.1990)). *Forum non conveniens* is a procedural tool available to U.S. courts and thus squarely falls within the literal language of Article 28(2).

In addition, the drafting history does not support an alternative interpretation. The withdrawal of the British *forum non conveniens* proposal can plausibly be understood as a reluctance on the part of Britain to impose the *forum non conveniens* doctrine on all parties to the Convention. It does not necessarily signify an intention by the drafters to prohibit signatory nations for which the *forum non conveniens* doctrine was part of the procedural law from employing that doctrine in a Convention case. The same can be said for the civil

law drafters for whom *forum non conveniens* was an alien concept. Those drafters could well have adopted 28(2) precisely because there were numerous procedural rules of non-civil law nations with which the drafters were unfamiliar, and with which they did not want to interfere.

■ Finally, Plaintiffs' contention that Defendants have failed to establish that a French court will accept waiver of the Convention's statute of limitations is misplaced. Article 29(1) of the Convention provides that "The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped." 49 U.S.C. § 40105 note. Plaintiffs cite *Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151 (8th Cir.1999) and *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138 (2d Cir.1998) for the proposition that satisfaction of Article 29 is a condition precedent to suits, and not subject to tolling agreements or waivers, as it goes to a court's treaty jurisdiction.

*Husmann* and *Fishman,* however, do not compel dismissal of the motion. First, in those cases plaintiffs had failed to file their initial claims in time to satisfy the statute of limitations of Article 29, and argued, unsuccessfully, that the statute of limitations had been tolled by bankruptcy filings (*Husmann*) and infancy (*Fishman*). In the instant motion, by contrast, Plaintiffs have satisfied the Article 29 statute of limitations by timely filing their claims in the United States. *Fishman* and *Husmann* say nothing about whether the statute of limitations is not satisfied when a timely filed action in a United States court is dismissed and refiled in a foreign court at a point when the statute of limitations would have run had the claim never been previously filed.

Second, the decision would be for a French court to make, and any decisions of United States courts on the issue would not be binding.

Third, Defendants have provided the expert affidavit of Philipe Delebecque, a French attorney and professor of Civil Procedure and Transportation law, who concludes that the courts of France will not deem the refiling of the French Actions in such courts to be time-barred by the Convention. In the alternative, Professor Delebecque concludes that Defendants' waiver of any statute of limitations defense would enable a French court to adjudicate the French Actions. Unlike Plaintiffs' claims regarding French law, which are merely conjectural, Professor Delebecque provides specific statutory authority in support of his conclusions.

Fourth, as previously indicated, the possibility of conditional dismissal makes consideration of this issue largely academic. As this Circuit has stated, "If the [foreign court] refuses jurisdiction notwithstanding defendant's consent, plaintiff is still protected by the conditional nature of the dismissal. Thus further inquiry into foreign jurisdictional law really is needless since it is so easily obviated by use of the typical conditional dismissal device." *Schertenleib v. Traum,* 589 F.2d 1156, 1163 (2d Cir.1978).

For these reasons, France is an adequate alternative forum.

### V. *Private and Public Interest Factors*

Since an adequate alternative forum exists, the Court must consider the relevant "private" and "public" interest factors listed in *Gilbert* and determine whether "the balance of convenience tilts strongly in favor of trial in the foreign forum." *Maganlal,* 942 F.2d at 167.

### A. *Private Interest Factors*

■ The "private interest factors" include the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the enforceability of a judgment; the possibility of viewing premises;

and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839.

■ Taken together, the private interest factors are a wash. The ease of access to sources of proof, and the availability of compulsory process for the attendance of unwilling, and the cost of obtaining attendance of willing, witnesses, can be considered together, as those factors hinge on the theories which the parties may seek to prove at trial. The other private interest factors will be taken up subsequently.

Plaintiffs in these wrongful death actions are seeking punitive damages, damages for decedents' pre-death pain and suffering, and compensatory damages. As noted, Defendants are willing to concede liability as to compensatory damages in the French Actions.

"As to damages, it is well-established that ease of access to proof of loss in the jurisdiction where decedent was domiciled weighs heavily in favor of dismissal." *Chhawchharia v. Boeing Co.,* 657 F.Supp. 1157, 1161 (S.D.N.Y.1987). Thus, it is likely that most of the evidence as to compensatory damages is located in France. Although Plaintiffs indicate that some compensatory damages evidence with respect to several of the French Actions is located in the United States, the quantity of such evidence is likely to be outweighed in most, if not all, such actions by evidence in France. For the remainder of the French Actions, Plaintiffs do not allege that compensatory damages evidence is located outside France.

On the other hand, evidence as to punitive damages and pain and suffering before death is far more likely to be located in the United States. The Court recognizes that there are open questions in this case as to the availability of such damages in the French Actions, whether the Actions are tried in the United States or in France. France, apparently, does not allow punitive damages. In certain circumstances, however, France allegedly includes within an award of compensatory damages a component of "moral damages," for which consideration of the degree of Defendants' liability or culpability may require evidence likely to exist only in the United States. Moreover, the volume of evidentiary materials generated by an inquiry into moral damages may be quite large—possibly enough to outweigh materials concerning "pure" compensatory damages.

In sum, the materials submitted to the Court in support of this motion do not provide a sufficient basis upon which to determine whether the ease of access to sources of proof in a trial for damages—even one in which Defendants do not contest liability for compensatory damages—favors dismissal. This factor is therefore neutral.

For the same reasons, it is not possible to determine whether the "witness" factor favors dismissal. Evidence pertaining to possible "moral damages" and pre-death pain and suffering may require as much testimony as evidence pertaining to pure compensatory damages. Thus, this factor is also neutral.

Of the remaining private interest factors, only the catchall factor of "other practical problems" carries any weight in the analysis. Given the nature of the accident, a viewing of the accident scene is not likely to convey much information either important or relevant to determining the merits of these actions. As for the enforceability of the judgment, this Court could include as a condition of dismissal Defendants' guarantee of payment of judgments.[5]

Of some weight are the costs, time spent, and possibility of confusion which

---

5. As indicated above, Defendants have agreed to "promptly pay any damages awarded by the courts of France, subject to any right to appeal in that forum," if the French Actions are dismissed from this Court. Def's Memo. in Support, at 2.

will arise from the translation of documents and testimony from French to English for a trial in this Court. On the other hand, the absence of contingent fee arrangements in France may place a considerable burden on the plaintiffs in the French Actions if the cases are dismissed here. While the factor should not be given "substantial weight," *Reyno,* 454 U.S. at 252 n. 19, 102 S.Ct. 252, the absence of contingent fee arrangements in a foreign jurisdiction is a permissible factor to weigh in the *forum non conveniens* analysis. *See Murray v. British Broadcasting Corp.,* 81 F.3d 287, 292 (2d Cir.1996). Defendants' willingness not to contest liability as to compensatory damages will not necessarily eliminate the concern that French Action plaintiffs may incur financial hardship in finding and retaining appropriate French counsel to pursue their claims if the claims were to be dismissed from this Court. Plaintiffs and their attorneys here, of course, have already invested time and money on discovery, independent investigations, experts, consultants, and pretrial proceedings. There is an advantage to resolving all disputes arising out of a particular incident in a single forum, which would be lost if the French Actions were to be dismissed. When these considerations are balanced against the problems of translation, the "other practical problems" factor is also neutral.

In sum, the private interest factors do not strongly support either dismissal or retention of the French Actions.

### B. *Public Interest Factors*

■ The "public interest factors" include the interest in avoiding administrative difficulties arising from court congestion; the interest in avoiding the unfair imposition of jury duty on citizens of an unrelated forum; the "local interest in having localized controversies decided at home"; the interest in having a diversity case tried in a forum that is at home with the law governing the case, the interest in avoiding unnecessary problems with the

conflict of law, or the application of foreign laws; and the interest "[i]n cases which touch the affairs of many persons" in insuring that such individuals will have access to the trial. *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839.

■ The public interest factors weigh strongly against dismissal. At the outset, it is worth remarking that Defendants have not cited to—nor is this Court aware of—a single case, arising from a catastrophic event that happened in United States territory, that was dismissed on *forum non conveniens* grounds in order to be refiled in a foreign nation. The catastrophe happened not far from this Courthouse. The investigation into the cause of the catastrophe has been enormously extensive and costly, consuming the energy and resources of multiple administrative agencies of the United States Government and of the State of New York. Congress has held hearings and Vice–President Gore has headed a Presidential Commission on the crash. Imposition of jury duty would not be unfair, particularly as jury duty will be imposed in any event, as the non-French plaintiffs would not be subject to dismissal under this motion.

In a memorandum in support of a previous motion regarding applicable law, Defendants stated that "the presence of foreign plaintiffs (who chose to sue in the United States) does not change the essentially American character of this case, which involves a flight originating in the United States, a United States carrier, United States manufacturing defendants, and predominantly United States domiciliaries as passengers." Defendants' Reply DOHSA Memorandum, at 18. In addition, the piecemeal litigation that would be created by dismissing the French Actions from the proceedings in this Court weighs against dismissal as a public interest factor as well as a private interest factor.

Admittedly, the problem of applying foreign law, or addressing difficult questions of conflicts of law, weighs in favor of dismissal. Indeed, in the earlier motion be-

fore this Court in this action referred to above, Plaintiffs maintained that the approximately fifty-five foreign plaintiffs should be "entitled to recover the damage elements permitted under the laws of their domiciles regardless of where the disaster occurred." Plaintiffs' Committee's Memorandum in Opposition to Defendants' Joint Motion to Exclude Remedies Under All Laws Other Than the Death on The High Seas Act, 46 U.S.C.App. §§ 761–767.

However, the application of foreign law is never in itself a controlling factor in a *forum non conveniens* analysis. *See Boosey & Hawkes Music Pub. Ltd. v. Walt Disney Co.,* 145 F.3d 481, 492 (2d Cir. 1998); *Peregrine Myanmar,* 89 F.3d at 47. Here, the public interest factors supporting retention of the French Actions outweigh the foreign law issue.

 Finally, because the majority of Plaintiffs in these consolidated actions have not filed on behalf of French decedents but of United States decedents, granting Defendants' motion will not cause the entire case to be dismissed. On the contrary, it will continue in this Court. In the meantime, the French Actions would be refiled and retried in France. Since there were apparently a number of other foreign nationals on the flight, dismissal of those actions would be appropriate if it were deemed appropriate to dismiss the French Actions (assuming Defendants were willing not to contest liability for compensatory damages). This would not be an efficient use of judicial resources. Notwithstanding the ability to sever damages from liability, a certain amount of administrative overlap will inevitably result when cases arising out of an identical set of facts are tried in separate fora. The prospect of several trials simultaneously taking place in different countries around the world thus also weighs against dismissal.

### C. *Weighing the Private and Public Interest Factors Together*

Because the "strong presumption in favor of the plaintiff's choice of forum ...

may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum," *Reyno,* 454 U.S. at 255, 102 S.Ct. 252, dismissal on the grounds of *forum non conveniens* is the exception, not the rule. *See Gilbert,* 330 U.S. at 504, 67 S.Ct. 839; *Maganlal,* 942 F.2d at 168.

If Defendants were not willing not to contest liability as to compensatory damages, this motion would not require serious consideration. It would not be necessary to consider the public interest factors, because the private interest factors would themselves weigh heavily against dismissal. Defendants' willingness not to contest liability makes dismissal a closer issue. Nevertheless, an exception is not warranted here. This Court has weighed all the factors of the private and public interest analysis established in *Gilbert,* and has found that, taken together, the balance does not favor dismissal. The private interest factors are a wash, and the public interest factors favor retention of the French Actions. Given the additional constraint of the strong presumption in favor of plaintiff's choice of forum, it would not be appropriate to dismiss the French Actions on the basis of this motion.

### *Conclusion*

For the reasons set forth above, the motion is denied.

It is so ordered.